# IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RACHEL FREEMAN,[1] | § | |
| | § | No. 122, 2021 |
| Petitioner Below, | § | |
| Appellant, | § | |
| | § | Court Below–Family Court |
| v. | § | of the State of Delaware |
| | § | |
| MARK CAMPBELL, | § | |
| | § | File No. CN16-2314 |
| Respondent Below, | § | Petition Nos. 19-26351, 20-22399 |
| Appellee. | § | |
| | § | |
| | § | In the interest of: |
| | § | Aaron Campbell |

Submitted: December 17, 2021
Decided: February 28, 2022

Before **SEITZ**, Chief Justice; **VALIHURA** and **VAUGHN**, Justices.

## ORDER

After careful consideration of the parties' briefs and record on appeal, it appears to the Court that:

(1)    The appellant, Rachel Freeman (the "Mother"), filed this appeal from a March 12, 2021 Family Court order awarding Mark Campbell (the "Father") primary placement of the parties' child.  Having reviewed the parties' respective arguments, we affirm the Family Court's judgment.

---

[1] The Court previously assigned pseudonyms to the parties pursuant to Supreme Court Rule 7(d).

(2) The parties are the parents of a son, born in 2015 (the "Child"). Under a stipulation and order agreed to by the parties and entered by the Family Court on August 26, 2019 (the "Custody Order"), the parties shared joint legal custody of the Child; the Child primarily resided with the Father in Oxford, Pennsylvania; and the Mother had regular, scheduled visitation with the Child. On September 13, 2019—mere weeks after the parties signed the Custody Order—the Mother filed a *pro se* petition to modify the Custody Order. With the assistance of counsel, the Mother later amended the petition, seeking additional overnight visitation and contact with the Child beyond that which was provided in the Custody Order.

(3) In July 2020, the Mother filed a motion to stay on the grounds of inconvenient forum to allow her to commence custody proceedings in Pennsylvania. In support of her motion, the Mother alleged, among other things, that she would soon be relocating to Pennsylvania. The Father objected to the motion and argued that that the case should remain in Delaware because (i) the Child has several meaningful contacts to Delaware and (ii) the Family Court was familiar with the parties as well as the complex history of the case. The Family Court denied the motion given the court's history with the family, the multiple Department of Family Services investigations, and the findings (and non-findings) of abuse. The Family Court noted that the Mother could file a motion based on the court's lack of jurisdiction if she does, in fact, move to Pennsylvania.

(4)     In October 2020, the Father filed a petition for a rule to show cause, alleging that the Mother had repeatedly violated the terms of the Custody Order and that these violations had interfered with the Child's education and his relationship with the Father.   The Family Court consolidated the Mother's petition for modification of the Custody Order and the Father's petition for a rule to show cause. In November 2020, the Family Court permitted the Father to amend his answer to the Mother's petition for modification of the Custody Order and add a counterclaim, wherein the Father alleged that it was in the Child's best interests that the Father have sole legal custody of the Child and that the Mother's visitation with the Child be restricted for the reasons stated in the Father's petition for a rule to show cause.

(5)     On December 4, 2020, and December 14, 2020, the Family Court held a full hearing on the merits of the petitions.  The Family Court heard testimony from the Mother and the Father, each of whom appeared with counsel.  On March 12, 2021, the Family Court issued a fifty-one-page written decision (the "Decision"). The Decision awarded the parties joint legal custody, granted the Father primary placement of the Child, established a visitation schedule for the Mother, and found the Mother in contempt of the Custody Order.  The Mother filed a motion for reargument, arguing that she had left her job in order to be more involved in her son's life.  The Family Court denied the motion, finding that the motion did not set forth any basis for modification of the Decision.  The Father filed a motion for

reconsideration, asking the court to amend the Decision to specify a weekday for the Mother's weeknight visit, establish a holiday schedule, and provide that each party receive one weeklong vacation with the Child every summer. The Family Court granted the Father's motion and amended the Decision as requested. The Mother appeals.

(6) Our review of a decision of the Family Court extends to a review of the facts and law, as well as inferences and deductions made by the trial judge.[2] Our duty is to review the sufficiency of the evidence and to test the propriety of the findings.[3] Findings of fact will not be disturbed on appeal unless they are determined to be clearly erroneous.[4] We will not substitute our opinion for the inferences and deductions of the trial judge if they are supported by the record.[5]

(7) Under Delaware law, the Family Court is required to determine legal custody and residential arrangements for a child in accordance with the best interests of the child.[6] The criteria for determining the best interests of the child are set forth in 13 *Del. C.* § 722(a). The Family Court must tailor its custody order to "permit

---

[2] *Wife (J.F. V.) v. Husband (O.W.V., Jr.)*, 402 A.2d 1202, 1204 (Del. 1979).

[3] *Id.*

[4] *Id.*

[5] *Id.*

[6] 13 *Del. C.* § 722(a) ("The [Family] Court shall determine the legal custody and residential arrangements for a child in accordance with the best interests of the child.").

4

and encourage the child to have frequent and meaningful contact with both parents" unless it finds that the child's contact with one parent would endanger the child's physical health or impair his emotional development.[7]

(8)     On appeal, the Mother essentially argues that the best-interests factors favor a 50-50 shared-custody arrangement, to which, she alleges, the Father agreed during the hearing.  We find no merit to the Mother's arguments.

(9)     As a preliminary matter, to the extent that the Mother asserts that the Father agreed "on the record" to a different custody arrangement than that which he sought in his filings with the Family Court,[8] this Court is unable to review her claim because the Mother failed to provide a copy of the transcript of the hearing.  The same is true to the extent that the Mother challenges the weight that the Family Court gave to the evidence that was presented at the hearing.  Supreme Court Rule 14 provides that the appellant is required to provide the Court with "such portions of the trial transcript as are necessary to give this Court a fair and accurate account of the context in which the claim of error occurred [as well as] a transcript of all evidence relevant to the challenged finding or conclusion."[9]  In her notice of appeal, the Mother indicated that transcripts of the Family Court hearing were not necessary

---

[7] 13 *Del. C.* § 728(a).

[8] We note that the Father denies agreeing to a 50-50 split in his answering brief.

[9] Del. Supr. Ct. R. 14(e).

for the presentation of the claims of error that she intended to raise in her appeal. But in the absence of the transcript of the custody hearing, this Court is unable to review the Mother's claims of error regarding the Family Court's factual findings.

(10) In its opinion, the Family Court considered all of the factors set forth in Section 722 and concluded that factors one (the parties' wishes), two (the children's wishes), five (the parties' physical and mental health), seven (the parties' history of domestic violence), and eight (the parties' criminal histories) were neutral—that is, none of these factors weighed for or against either party. The Family Court found that factor three (the children's interactions and interrelationships with the parties, extended relations, and other residents of the parties' respective households) slightly favored the Father. And the Family Court found that factor four (the children's adjustment to their home and community) and factor six (the parties' past compliance with their parental responsibilities) weighed in favor of the Father. In finding that factor six favored the Father, the court did not—as the Mother asserts—hold the fact that she is single against her. Nor did the court hold the Mother's alleged lack of income against her. Instead, the Family Court found that factor six favored the Father because: (i) the Mother repeatedly fails to ensure that she understands the court's orders regarding visitation and preschool/prekindergarten enrollment; (ii) the Mother continues to pick fights with the Father, escalating matters that could otherwise be resolved easily; and (iii) the Mother's failure to

6

enroll the Child in, or consistently deliver him to, a preschool/prekindergarten program was irresponsible. Upon review, we find no basis to disturb these findings. The Family Court properly applied the law to the facts in concluding that primary placement of the Child with the Father was in the Child's best interests.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Family Court is AFFIRMED.

BY THE COURT:

*/s/ Karen L. Valihura*
Justice